Good morning, Your Honors. Jeremy Rosen of Horvitz and Levy for the appellant, Mr. Chen. Could you speak up a little? I couldn't hear you. Jeremy Rosen of Horvitz and Levy for the appellant, Mr. Chen. Thank you. The immigration judge in this case rejected all of Mr. Chen's claims solely on the basis of an adverse credibility finding. Why does the evidence compel us to overturn that? It looked to me as though there were a lot of inconsistencies about when he was in China, when he was in Belize, when he was in Thailand. His visa stamps and his passport didn't match up. And, of course, he had explanations for all that. But it seems to me that a finder of fact could believe or disbelieve them. And I don't understand why the evidence compels us to overturn the finder of fact. Well, I think at a minimum, Your Honor, the evidence that was not considered by the immigration judge requires a reversal for further fact-finding by the immigration judge. What do you mean not considered? Well, particularly, let me start with where it's most egregious, and that's with the Catt claim. This Court has consistently held that when a court makes a credibility – when an I.J. makes credibility findings on an asylum claim, that that cannot wash over into the Catt claim, that all evidence material to the Catt claim has to be considered. Here, the immigration judge specifically rejected the Catt claim solely on the basis of the credibility finding that the immigration judge made with respect to Mr. Chen's testimony. Why can't he do that? I mean, I remember a case. I was on a panel where we said, good Catt claim, even though the person's a liar. But that was because the evidence that he'd be tortured if he went back, liar or not, was so strong. In this one, I don't understand why that's so. Well, two things. First, here, the evidence is compelling on at least a going-forward basis. It's undisputed, at least, that Mr. Chen is a member of a dissident religion in China. What do you mean, undisputed? He's only a member of Zhang Gang if he's believed when he says he's a member of Zhang Gang, and the IJ doesn't believe a word he says. Well, I think the – well, this goes back to the evidence that has to be considered. The immigration judge did not consider most of the evidence that was presented, even with respect to the one basis for the finding of adverse credibility. The immigration judge only looked at part of the passport. The immigration judge looked at the portion of the passport showing the visas in Belize but ignored the portion of the passport showing his exit from China. I didn't make my question clear. I remember a Superior Court judge once told a lawyer in Fairbanks, he said, Mr. So-and-so, I don't trust you as far as I can throw a piano. Well, that meant it wasn't just the contradicted things that the lawyer said that the judge didn't trust. It was anything the lawyer said that the judge didn't trust. And I don't understand why that doesn't fit here. Well, the problem is, is that even if the immigration judge didn't believe Mr. Chen, he wasn't – the immigration judge did not consider all of the documentary evidence. There is, for instance, the documentary evidence that was never disputed by the government, indicating from the Chinese government authority that terminated Mr. Chen on the basis of his religious beliefs and which indicated he had been arrested previously and sent for re-education. This was never – Why do they have to believe that that document's real, even though it looks like some of the others are faked up? Well, but that – those factual findings were never made, and that is, again, a significant problem with what the immigration judge did here. For instance, in the Zahidi versus the INS case, which we cited in our papers, a document is considered valid unless specific findings are made that the document is invalid. Here, the immigration judge did not make any findings with respect to numerous documentary evidence, the termination notice, the letter from Mr. Chen's wife, all of the country condition evidence. None of this evidence was considered at all in the first instance by the immigration judge. You say it wasn't considered. Are you saying that the I.J. didn't receive it into evidence? It was received into evidence, Your Honor, but was not specifically addressed in making the credible – Does the I.J. have to specifically address every item of evidence that's in evidence? I believe that you have to – the I.J. has to address the material evidence when making credibility terminations. Here, the immigration judge, in making the credibility determination, only focused on half – one of the stamps on the passport, and found that because there was a visa for Belize, that that meant everything Mr. Chen had said was inaccurate without examining on the record the termination notice, which shows that Mr. Chen was terminated for his religious beliefs. Or the other stamps on his passport would show he left China on July 14th, exactly as he testified to, that he then entered Hong Kong the same day and then left Hong Kong on July 15th. Those were not at all discussed by the immigration judge, and at a minimum, we would suggest there has to be a reversal so that the immigration judge can make these factual findings, especially as to the cat claim, where this Court's jurisprudence is very clear that a mere credibility finding cannot wash over onto the cat claim, and it's not for this Court to weigh the evidence itself. It's for the immigration judge, in the first instance, to consider all of the evidence on the cat claim, and that was not done here. There are numerous cases in particular that talk about the country condition evidence being extremely important in a cat claim because the focus is different. You're looking on a going-forward basis. If Mr. Chen is returned to China, will he more likely to not be tortured? The evidence from the country conditions is that members of his religious beliefs are routinely tortured, arrested, and persecuted. This evidence was never considered by the immigration judge, and it's a requirement that there be a reversal, at least with respect to the cat claim, for further re-hearing. And if there are no more questions now, I'd reserve the rest for rebuttal. I don't remember where in the administrative record there was any evidence that a Zhang Gang member could expect to be tortured. That was the you can look at page 156 to 157 of the record that said thousands of people, of the fallen-gone type sects, are in re-education camps, and from 1999 to 2001, over 200 were killed after being tortured in custody. Those are from the U.S. State Department reports. We also have the Amnesty International reports in the record that were also never discussed by the immigration judge that further indicates torture and repression for religious beliefs. Thank you. Thank you. Good morning, Your Honors. Jeffrey L. Mencken, United States Department of Justice for the Attorney General. Your Honors, I think the issue clearly is that Mr. Chen has not identified evidence that compels a finding that he was credible. And I could stop right there. The evidence clearly supported the notion that he had not proven his case and that he had not proven his case credibly. Let me ask you this. He, the IJ, seemed to be concerned about the Belize visa, right? That seemed to be the centerpiece of the concern that the IJ had. Yes. He had an explanation for that. He said it was procured by family members. It showed up on the passport. He has no further knowledge of how it got on there. What basis does the IJ have to disbelieve that? Well, Your Honor, I think I don't know is not a compelling explanation. Clearly, if we look at the visa itself. Now, he says, I gave my passport to my family, and it came back with these things on it. Right. So what else? I mean, what else? That's the totality of his knowledge. Now, if she doesn't believe it, or he doesn't believe it, that's one thing. But what is the basis for the disbelief? Let me take, Your Honor, through a couple steps. First, there's no reason that the board or the IJ had to believe that Mr. Chen's passport was taken from him, and then the next day this visa appears that was issued in Belize. I agree, but they can't just come to him in a dream or flip a coin. They have to have some reason to disbelieve it. Right. And the visa itself is issued stamped March. He alleges that he was persecuted in May. He says he didn't go to Belize until July, but the visa expires in June. Right. It's a three-month visa. So how does he get into Belize in July with an expired visa in June? You have to believe that he somehow just dropped into Belize in order for Mr. Chen to be credible, but it gets worse for him because he testified, and it's in the record at page 105, that he was in Belize when the extension was granted. Now, if he's in Belize when the extension is granted, why is the extension granted back to June? And, again, how does he get into Belize in July with an expired visa? It just doesn't add up. And there's ample grounds to support the finding that he was not credible. What do you make of the other stamps that Mr. Rosen spoke about? Well, there's nothing in the record that compels that anything in these Chinese language stamps are more credible or more controlling than the Belize stamp. I would point out that the- You have to have some reason for accepting one over the other. You just can't, like I say, flip a coin. He's got stamps in his passport that say he left Beijing on a certain day, went to Hong Kong the next day, left Hong Kong the next day. I mean, you have to- I can point out a few things. First of all, there's no stamp showing that he leaves China. There's a stamp that's showing that he enters Hong Kong. It doesn't say from where. If the evidence shows that he might have been in two different countries at the same time, then he doesn't win, and he doesn't win below, and he certainly doesn't have a compelling reason that he should win here. The fact that we're even having a good faith discussion of the meaning of this evidence means that the evidence does not compel the result that he wishes. If we have to guess, if we have to fill in the blanks for ourselves, if we have to grasp for some explanation, that means he doesn't win, that the evidence doesn't demand the result that he was credible. But he's offered an explanation.  And my answer, my question to you is, on what basis was it rejected? It was rejected on the basis that the Belize visa suggested at a minimum and proved at the other end of the scale that he wasn't in China at the time. This is circular. He's got an explanation for that. Right. And his explanation is that my parents got somebody to stamp it and gave it back to me. And your answer, well, the dates say he's not there. Okay, but he's got an explanation for it. Now, my question to you is, what basis do we have to reject his explanation? Because it doesn't line up. Because you have to believe that somebody in a 24-hour period took his passport to Belize and got the visa in the first place, the visa that on its face was expired before he needed to use it. You have to believe that he was in Belize when it was extended, which is what his testimony was. And you have to believe that he gets into Belize with an expired visa. And that somehow, even if you believe somehow that it was backdated when he was in Belize and the extension was granted, that still doesn't explain how he gets into that country with a visa that was expired. So there are enough holes here that if you don't know what to believe, or if the judge could believe two seemingly diametrically opposed results, that doesn't get him what he wants below. And it more than certainly does not get him what he wants here. Let me ask something. I think it's real elementary, but I want to make sure I understand it. The visa is the rubber stamp on the passport when you go to the counter at the airport. Is that right? I believe the visa, and this is my understanding, it's not necessarily explained in the record, the visa is something that is, in many places, is obtained in advance. I'm talking about this case in particular. In this case in particular, if we look at what it looks like, I'm looking at AR-404. Right. Your Honor, I have that. Am I looking at the right page? Yes. That's the page I'm talking about. Okay. And there are those rubber stamps? Yes. They write some stuff on them? I consider, personally, Your Honor, the entire thing to be the visa,  I don't know what the meaning of the other stamps are. I would also point out there's no translation of some of the Chinese stamps in the first place, so we don't know what they mean. The Hong Kong stamps certainly are in English, but the Chinese stamps aren't, and they were never translated. So to call them compelling evidence, I think, is more of a reach than we can really make. What about Mr. Rosen's point that even if the credibility finding holds up for the asylum, it's defective as far as the CAT claim is concerned? I don't think the Board's decision denies the CAT claim based on the credibility finding. It just says that he didn't meet his burden of proof. In what respect did he not meet his burden of proof? He says he's got evidence that shows that a lot of people who practice this faith are tortured and killed. Well, then I'll take the step back. I don't think it was – it certainly is not conceded that he ever practiced this, for lack of a better term, I guess, religion. Okay, that's the credibility problem. Yes. Okay, now my question again was he says you can't use that credibility finding. If it's the same factual evidence, I think you certainly can. If he's not credible, he suddenly doesn't become credible when you're considering him for CAT. If he says I was persecuted because I practiced this religion and there's no – that claim isn't even credible, he doesn't even practice it in the United States. At least he does it by himself, but he admits that it's something that you need to do with other people, but he's just too busy to find other people. That weighed into the decision. So there's – any which way he turns, he's got problems, and he certainly hasn't established that all of those problems disappear in this room. One other thing about the termination notice that does not compel anything. I would point out that the notice itself says that he was arrested again. Mr. Chen testified he was only arrested once. It also says that he was sent to some re-education. That's not a claim Mr. Chen put in his own asylum application. That's not a claim Mr. Chen made in his own testimony. He doesn't get asylum based on an unsigned letter saying that he was subjected to re-education, and that wasn't in his own claim. So, again, if it doesn't add up, if we're left to fill in the gaps, if we're left to paper over or hope for explanations, there's no compelling evidence here. So unless the – I'd be happy to entertain any other questions if the Court has. Thank you, Your Honor. Counsel. Thank you. The colloquy that was just happening between the Court and opposing counsel demonstrates why this case has to be reversed for a rehearing, because there is evidence in the record that cuts both ways, and the immigration judge did not make specific findings with regards to a majority of the evidence. I'm not sure of that. That's a very unusual situation where the cap claim is granted even though there's adverse credibility. And I recall the case where we did that. It was an Iraqi who had lied his way onto a CIA plane from an Iraqi dissident group to get out of Iraq. And we thought, well, even though everything this guy says is a lie starting with his name, nevertheless, Saddam Hussein's regime takes pictures of the people that get on those planes and are associated with the dissidents, so he'll probably go through the meat grinder when he gets back. In this case, I don't see anything analogous. Well, two things, Your Honor. First, the Kamalthus case I don't think makes that narrow distinction. It says that you can't have – you can't allow credibility findings in asylum to wash over right into a cap claim. And here at page 50 of the record, the immigration judge in addressing the cap claim based it solely on the previous credibility finding, which is under the Kamalthus case not permitted. The Kamalthus case says, quote, all evidence relevant to the possibility of future tortures shall be considered, including but not limited to other relevant information regarding conditions in the country of removal, which includes, as it goes on to say, the country report evidence, which is never once considered by the immigration judge. Even more fundamentally in terms of the evidence is with respect to the passport. Yes, you have the Belizean visa, but you also, at page 416 of the administrative record, have his – Mr. Chen's exit stamp from China on July 14, 2001, and on page 470. I read the explanations, and to me it read like that old who's on first comedy routine. It was very hard to make sense of anything. Well, I'm not sure that it's – well, if it's difficult to make sense, all the more reason why the immigration judge in the first instance should be required to make sense of it instead of ignoring it. He tried. He kept asking questions, and he kept getting explanations. They were implausible, and they were hard to reconcile with each other. I mean, if somebody's lying, he's not going to stand up there and say, I'm lying to you. Except for the fact that the evidence at page 407, the entry and exit stamps in Hong Kong, are perfectly consistent with Mr. Chen's testimony because they're clearly in English. He entered Hong Kong on July 14 and exited Hong Kong on July 15. According to the immigration judge, he was in Belize at that point, which would be impossible. And it is very consistent with Mr. Chen's testimony that he doesn't know how his Belizean visa was acquired, but that he left China on July 14. And therefore, we respectfully request a remand for a rehearing to consider this evidence. Thank you very much. Thank you, counsel. Thank you. And thanks – you took this on a pro bono basis to – yeah, we appreciate your doing that also. Thank you, counsel. Appreciate that.
judges: Hall, Kleinfeld, Silverman